IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA M. RIGHTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| FRANK M. ZUCCARELLI, DONALD ) | |
| MANNING, MARTIN LAREAU, LEONARD ) | |
| CHIARO, and SOUTH SUBURBAN COLLEGE, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants ) | |

## **COMPLAINT**

NOW COMES the Plaintiff, GINA M. RIGHTER, by and through her counsel, RICHARD S. ZACHARY P.C., and complaining of the Defendants, FRANK M. ZUCCARELLI, DONALD MANNING, MARTIN LAREAU, LEONARD CHIARO, and SOUTH SUBURBAN COLLEGE, states as follows:

### **Jurisdiction and Venue**

1. In this Complaint, Plaintiff is seeking to redress the deprivation of her rights and privileges secured under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), and the Equal Rights Amendment to the U.S. constitution.

2. This Court has jurisdiction over Plaintiff's aforesaid claims under 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff has also alleged a cause of action for retaliatory discharge under State law. Jurisdiction over Plaintiff's claim under State law is conferred pursuant to the pendent jurisdiction of the Court under 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391, since (i) the Defendants reside and do business in this District; and (ii) the acts and omissions which gave rise to the Plaintiff's Complaint all took place in the Northern District of Illinois.

## The Parties

5. Defendant FRANK M. ZUCCARELLI is Chairman of the South Suburban Board of Trustees.

6. Defendant DONALD MANNING is Vice President of South Suburban College, as well as a previous Director of the South Suburban College Police Department.

7. Defendant MARTIN LATREAU is Director of the South Suburban College Police Department.

8. Defendant LEONARD CHIARO is Chief of the South Suburban College Police Department.

9. Defendant SOUTH SUBURBAN COLLEGE is a public community college closely affiliated with Thornton Township and the Village of South Holland, located at 15800 S. State Street in the Village of South Holland, in the Northern District of Illinois.

10. The Plaintiff, GINA M. RIGHTER, was a police officer for the South Suburban College Police Department ("South Suburban" or "Department") for numerous years. Plaintiff was terminated from the Department on December 11, 2008.

## ALLEGATIONS COMMON TO ALL COUNTS

11. On January 3, 1989, the Plaintiff, aged 22, was hired as a full-time Campus Police Officer by the South Suburban Police Department. South Suburban employed approximately twenty (20) police officers, of whom thirteen (13) worked full-time. Upon finishing her training, Plaintiff's professional responsibilities were similar if not identical to those of a non-campus

2

police officer, and remained so throughout her employment.

12. On being hired, Plaintiff was the only female officer employed at South Suburban. During the next twenty (20) years, other than the Plaintiff, the Department hired but a single female officer, who lasted approximately three years (1992-1995). For at least seventeen (17) of the approximate twenty years during which Plaintiff was employed by the Department, Plaintiff was the sole female on the force.

13. On information and belief, Plaintiff's entrée into the all-male cadre of the South Suburban police force was prompted by pressures outside of the Police Department, and was resented by both Police Chief Leonard Chiaro ("Chiaro") and the Director of the Department, Donald Manning ("Manning"). On information and belief, the resentment of Chiaro and Manning became worsened once they discovered that Plaintiff did not give deference to male officers or executives as a matter of policy, but sought to assert her rights and privileges just as the male officers did.

14. Upon commencing her position, Plaintiff was placed on the "second shift," requiring her to work from 4:00 p.m. to midnight or later. Plaintiff asked to be placed on the regular daily shift, but was informed by Police Chief Chiaro that there were no openings.

15. Plaintiff was in good health when she commenced to work for South Suburban, and otherwise performed her duties skillfully and well. For approximately two years, Plaintiff worked as a regular officer on the second shift. Plaintiff was often called upon to work into the early hours of the morning, and put in work weeks which often totaled 50 hours or more.

16. During her first two years on the force, Plaintiff received a variety of union benefits, over and above her basic compensation, which went far to palliate the increasingly onerous demands being placed upon her. As a regular police officer, Plaintiff was a member of

the South Suburban College employees' union, which was the sole and only union which represented the campus police. Along with the other campus police officers, Plaintiff received overtime pay; was given paid leaves of absence; ate her lunch for free at the union; and was compensated for the hours she was required to spend in a courtroom, in addition to other benefits.

17. In or about 1991, campus police Chief Chiaro and/or Director Manning decided to undertake an adverse employment action that would result in the divestiture of Plaintiff's union membership, and the benefits such as overtime pay being afforded to her. Manning and Chiaro decided to give Plaintiff a "take it or leave it" promotion to the rank of sergeant, which would result in the instantaneous loss of her of union rights pursuant to South Suburban policy. On information and belief, the two officials discussed such impending action beforehand with South Suburban Board Member Frank M. Zuccarelli ("Zuccarelli"). On information and belief, Zuccarelli had been similarly opposed to bringing a female officer into the South Suburban Police Department, and wished to obliquely "convince" Plaintiff to tender her resignation.

18. On receiving notice that she had been promoted to Sergeant, Plaintiff was given the impression this was due to her skills at administrative tasks, as opposed to the routine police work assigned to the other campus officers. Only gradually did Plaintiff realize that she had been (i) deprived of her union rights and benefits, as well as (ii) removed from all proximity to the union meetings where her contributions had been valued, in exchange for a position which called for her to handle her previous responsibilities and a host of additional ones, for less compensation than she had received previously as a union member.

19. On information and belief, Chiaro, Manning and Zuccarelli were pleased with their efficaciousness in having simultaneously (i) removed Plaintiff from the campus officers' union, where her potential influence had been cause for concern; (ii) placed a woman in a "supervisory"

4

position in the Department, thus to placate external scrutiny in regard to gender discrimination; and (iii) moved the Plaintiff into a much more taxing job with less monetary rewards, thus to encourage the likelihood of her eventual resignation from the Department.

20.     Upon being promoted to Sergeant in 1991, Plaintiff lost all of her union benefits pursuant to South Suburban policy.  Plaintiff thus became just about the only member of the South Suburban Police Department without any union benefits.  Other than the campus police sergeant(s), only Chiaro and Manning were excluded from union membership, which scarcely equated any comparative loss of compensation for the latter.  Unlike the well-compensated Chief and Director, Plaintiff would now be earning less than the male officers for similar work, since (i) the regular officers received overtime pay and other union benefits, which Plaintiff was now debarred from receiving; and (ii) Plaintiff would be expected to work extra hours handling the same sort of police work as the other officers, while handling additional responsibilities as well.

21.     Deprived of paycheck-enhancing benefits such as overtime pay, Plaintiff learned to her further chagrin that she was now earning a salary substantially less than what the two other [male] Sergeants were earning for the same work.  Such inequity further underscored her palpable sense of having been adversely prejudiced due to the mere fact of her gender.

22.     Following the loss of her union rights, Plaintiff worked for the South Suburban Police Department for approximately ten (10) continuous years, on a full-time basis and without any leaves of absence.  During this period, Plaintiff remained on the second shift, beginning at 4:00 p.m. and working until midnight or later.  Plaintiff repeatedly put in for assignment to the regular daily shift [8:00 a.m. to 4:00 p.m.], but was always told that there were no openings.  As a non-union member, Plaintiff no longer received overtime pay, nor was compensated for the half-days she was required to spend in court, nor received any compensated leaves of absence.  When

5

the campus officers put in time at the rifle range to prepare for the annual police exam, they were paid for such time. Excluded from membership in the union, Plaintiff had to put in her hours at the rifle range on her own dime.

23. On several occasions during the aforementioned period, South Suburban police officers stated or intimated to Plaintiff that they [the officers] would never wish to become a Sergeant, because the officers ended up earning much more than the Plaintiff did. Such comments were stinging indeed, in light of the fact that Plaintiff was the sole and only female in the Department, yet was earning less than everyone else while doing the same [or more] work.

24. Plaintiff's responsibilities, during the aforementioned period and thereafter, included both office and field work. Although Plaintiff could have fulfilled the responsibilities of her position by remaining in the office full-time, Chief Chiaro and/or Director Manning insisted that Plaintiff handle regular police tasks, and also be the last person out of South Suburban College each night. At approximately midnight, Plaintiff was required to activate the alarm on the college premises. Plaintiff was also required to respond personally on each and every occasion that the alarm went off, which occurred about twice per week. Whenever an alarm report was received during the early hours of the morning, Plaintiff, and no other officer, was required to appear personally to investigate – regardless of the fact that Plaintiff had gotten to sleep perhaps one or two hours before.

25. During the aforementioned period [1991-2001] and thereafter – frustrated due to the deprivation of her union benefits made available to the regular campus officers – Plaintiff sought permission of the Director and/or Board of Trustees to invite a representative of the Fraternal Order of Police Officers onto the South Suburban campus. As a police officer, Plaintiff was eligible for membership in the Fraternal Order of Police Officers, which had yet to obtain a

6

foothold on the campus due to the union benefits which accrued to the regular officers through the employees' union. Earning less than the other officers for the same work, Plaintiff hoped that South Suburban would open its campus to the national union.

26. Upon making the aforesaid inquiries of the representatives of South Suburban College, Plaintiff was given the disheartening news that (i) the answer was "No"; (ii) that if Plaintiff persisted in her attempts to bring the Fraternal Order of Police Officers onto the campus, Plaintiff would be fired; and (iii) that even if the Fraternal Order of Police Officers managed to open a local chapter, South Suburban would simply re-classify the campus police as "security officers," and thus keep everyone from joining.

27. In or about 2001-2002, Plaintiff underwent two caesarian sections, on information and belief receiving a transfusion of tainted blood which caused her immune system to dysfunction. After fulfilling the demands of a difficult job for over ten years, Plaintiff began to experience a range of symptoms which made it increasingly difficult to maintain the onerous demands of a 4:00 p.m. to midnight shift, with responsibilities that often found her working in the field into the early hours of the morning. Plaintiff's onset of symptoms included retinal and spondylitic dysfunctions, which were found to be disabling by her physicians in regard to her current position, while not interfering with her ability to carry out a range of administrative and office-related tasks for the Police Department.

28. Beginning in or about October of 2001, to and through 2008, Plaintiff began to apply for a range of different positions at South Suburban College, both in and out of the Police Department, in order to be relieved of the increasingly debilitating stress of working until past midnight each day. Plaintiff offered to relinquish her position as Sergeant, in order to be assigned to the day shift and/or light duty. When this proved unsuccessful, Plaintiff applied for numerous

7

available positions in other departments. Having proved her abilities at administrative tasks during the past ten years, Plaintiff applied for job openings in financial management; in Training and Orientation; for secretarial, executive assistant and administrative positions; and for numerous other posted jobs at the College.

29. Plaintiff's determination to obtain a reassignment, transfer, or job accommodation that would relieve her of having to work the midnight shift for the campus police – while handling a host of additional tasks, without being eligible for union benefits – was also prompted by her irrepressible feelings for her three young children. Plaintiff's shift corresponded to virtually all of the time, each and every day, during which her children were home from school. Agonized by her inability to spend time with them during the precious hours of each afternoon and evening, Plaintiff would waken as early as possible to spend time with her kids before school. Required to rouse herself out of bed to answer each and every early-morning alarm at the campus, Plaintiff had no choice but to skimp on her sleep, or else resign herself to scarcely seeing her children at all. Such a continuous lack of sleep contributed to a worsening of her condition.

30. Despite the fact that Plaintiff was manifestly qualified for each and every position she applied for, Plaintiff's numerous applications for positions at South Suburban College, and/or for an assignment to the day shift or light duty at the Police Department, were uniformly denied or disregarded. Nor did Plaintiff ever manage to obtain a transfer from her stressful and debilitating midnight shift on the campus police force, although she applied for virtually every feasible job opening at the College during the next seven (7) years.

31. On information and belief, the series of rebuffed or disregarded applications which Plaintiff submitted, in increasing desperation, to various departments of South Suburban College, beginning in late 2001 and continuing until approximately 2008, were the outward and visible

8

sign of a surreptitious agreement and conspiracy, by and between Police Director Manning, his successor [as Director] Martin Lareau, Police Chief Chiaro, and Board Chairman Zuccarelli, to (i) willfully refuse to accommodate Plaintiff's medical disability, as well as (ii) to afford disparate and unequal treatment to Plaintiff, as opposed to that afforded to other individuals with the same qualifications and abilities, in order to bring about Plaintiff's resignation and departure.

32. During the aforesaid 2001-2008 period, on information and belief, South Suburban College could have placed Plaintiff on light duty at the Police Department, as an accommodation of her disability as authorized by her physicians. Plaintiff's medical symptoms – gradually worsening due to the stresses of her position on the midnight shift – were found by Plaintiff's physicians not to interfere with her ability to fulfill the tasks of an administrative position in the office of the campus Police Department. As a Sergeant, the bulk of Plaintiff's responsibilities were indeed administrative. Nevertheless, the Department showed no willingness whatsoever to assign duties to Plaintiff that did not include tasks, and/or working hours, which were bound to exacerbate the symptoms of her disability.

33. In or about 2004, Plaintiff fractured her hand in the course of employment, and was thereupon placed on light duty by the Department until the fracture healed. Nonetheless, Plaintiff's requests for a light-duty position in accommodation of her disability were uniformly denied or disregarded during the aforementioned, seven-year period.

34. In or about 2005, Martin Lareau ("Lareau") succeeded Donald Manning as Director of the Police Department. Once again, Plaintiff submitted a request for a transfer to the day shift. Just as his predecessor Manning had done, Plaintiff's request for a transfer and accommodation to the immeasurably more manageable hours of the day shift was denied by Lareau.

9

35. In or about January of 2007, Plaintiff applied for one of several available positions in the Police Department, all of which were on the regular day shift [8:00 a.m. to 4:00 p.m.]. In or about May of 2007, Plaintiff was devastated to learn that three outside applicants had been hired to fill the available positions.

36. In or about September of 2007, Plaintiff consulted an attorney about her potential rights and remedies in regard to her worsening predicament at work. On information and belief, such overtures became known to the officials at South Suburban College, inclusive of Lareau, Manning [now Vice President of the College] and/or Zuccarelli.

37. In January of 2008, Plaintiff was forced to take a Health and Hardship Leave of Absence lasting approximately 12 months, due to the progressive exacerbation of her disability occasioned by the rigors of her position and the refusal of South Suburban to accommodate her with different hours or light duties, or to allow her to obtain different employment at the College.

38. During her leave of absence in 2008, Plaintiff continued to request that the College accommodate her disability, upon her return to employment. Plaintiff asked the College to place her in an available, lower-level position of Administrative Assistant in the nursing department, for which she was manifestly qualified, nor would be impeded by her disability from performing. Plaintiff also asked, *inter alia*, that the College place her in the posted position of Administrative Assistant II in the Business and Technology Department, for which she was similarly qualified and capable. As with all of her prior requests and applications, Plaintiff's requests for an accommodation or reassignment during 2008 were disregarded by the College.

39. As of December 11, 2008, with her Leave of Absence nearing an end, Plaintiff was not yet vested in the State Universities Retirement System ("SURS") of Illinois, to enable her to receive any payments tantamount to the Social Security afforded to non-SURS employees.

40. On or about December 11, 2008, Plaintiff was called before the Board of Trustees of South Suburban College, upon allegations that Plaintiff had been excessively absent from her position on the campus police. Plaintiff sought to explain to the Board, helmed by Zuccarelli, that she had fruitlessly sought an accommodation of her disability for the past seven years, and had applied for a plethora of available positions, for which she was qualified and capable of performing, without a single application being accepted.

41. On December 11, 2008, Plaintiff was terminated from employment by South Suburban College.

42. On January 23, 2009, Plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), at the EEOC's Chicago District Office.

43. On Friday, July 10, 2009, District Director John P. Rowe of the EEOC mailed a notice to Plaintiff at her residence in Valparaiso, Indiana, by regular mail, informing Plaintiff of her right to sue within 90 days of her receipt of such notice. A copy of the EEOC's "right to sue" letter is attached hereto as Exhibit A.

44. On Tuesday, July 14, 2009, Plaintiff received said notice at her residence in Valparaiso, Indiana.

45. On October 12, 2009, 90 days after receiving said notice, Plaintiff timely filed this lawsuit.

### COUNT I
**(Disability Discrimination – South Suburban College)**

1-45. Plaintiff adopts and restates the preceding allegations, as though fully set forth herein.

46. Beginning in or about 2001, to and through 2008, Plaintiff suffered from an inadvertent disability, which did not interfere with her ability to perform the office-related or

11

administrative tasks of numerous available positions at South Suburban College.

47. Defendant South Suburban College, by and through its agents and representatives, was aware of Plaintiff's disability.

48. During 2001-2008, Plaintiff was otherwise qualified for numerous available positions at the College, as well as for light duty and/or administrative positions in the campus Police Department.

49. During the aforementioned period, South Suburban College, by and through its employees and representatives, willfully failed and refused to accommodate Plaintiff's disability, as well as accorded disparate and inequitable treatment to Plaintiff as a consequence of her disability alone.

50. On December 11, 2008, when South Suburban College terminated Plaintiff from employment, a substantial and predominant factor in such decision was the fact that Plaintiff was suffering from a disability.

51. In so discriminating against the Plaintiff, Defendant South Suburban College acted in violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*.

52. As the consequence of the Defendant's willful and knowing misconduct in violation of the ADA, Plaintiff has been caused to suffer an exacerbation of her disability, to incur the necessity to be hospitalized and receive additional care and treatment, to incur and be made responsible for the costs of treatment and therapy, to suffer pain and suffering and a loss of normal life, to undergo a considerable loss of wages and concomitant benefits, and to incur the forfeiture and loss of her right to a pension.

WHEREFORE, Plaintiff GINA M. RIGHTER requests the following relief of this Honorable Court:

      A.      For the entry of judgment in her favor and against SOUTH SUBURBAN COLLEGE in an amount in considerable excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

      B.      For an award of her attorney's fees;

      C.      For the recoverable costs of this action;

      D.      For such other relief as this Court may deem appropriate.

### COUNT II
### (Gender Discrimination under Title VII – South Suburban College)

1-52.    Plaintiff adopts and restates the preceding allegations, as though fully set forth herein.

53.    In or about 1991, South Suburban College, by and through its agents and employees, undertook an adverse employment action as a means of discriminating against Plaintiff due to her gender. The Defendant, by and through its agents and employees, gave Plaintiff a semblance of a promotion, which sufficed to deprive Plaintiff of all of her union rights and benefits, *instanter*.

54.    When the Defendant undertook this action, on information and belief, Plaintiff was the sole and only female officer employed by the South Suburban Police Department.

55.    After Plaintiff received her so-called "promotion," Plaintiff received less compensation that the male officers employed by the Department, for the same or similar work.

56.    Defendant, by and through its agents and employees, thereafter undertook further adverse employment action based solely upon Plaintiff's gender, by requiring that Plaintiff, and none of the male officers, be responsible for answering every alarm report on the campus, after concluding her shift at midnight or later.

57. In so discriminating against the Plaintiff, Defendant South Suburban College acted in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

58. As the consequence of the Defendant's willful and knowing misconduct in violation of Title VII, Plaintiff has been caused to undergo an exacerbation of her disability, to incur the necessity to be hospitalized and receive additional care and treatment, to incur and be made responsible for the costs of treatment and therapy, to suffer pain and suffering and a loss of normal life, and to undergo a considerable loss of wages and benefits, and to incur the forfeiture and loss of her right to a pension.

WHEREFORE, the Plaintiff requests the following relief of this Honorable Court:

A. For the entry of judgment in her favor and against SOUTH SUBURBAN COLLEGE in an amount in considerable excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

B. For an award of her attorney's fees;

C. For the recoverable costs of this action;

D. For such other relief as this Court may deem appropriate

### COUNT III
**(Retaliation under Title VII and the ADA - South Suburban College)**

1-58. Plaintiff adopts and restates the preceding allegations, as though fully set forth herein.

59. On or about December 11, 2008, when the Defendant South Suburban College terminated Plaintiff from her employment, such action was in retaliation for Plaintiff's requests for an accommodation of her disability.

60. In so retaliating against the Plaintiff, Defendant South Suburban College acted in violation of both the ADA, and Title VII of the Civil Rights Act of 1964.

61. As the consequence of the Defendant's willful and knowing retaliatory discharge of the Plaintiff, Plaintiff has been caused to undergo a considerable loss of wages and benefits to which she was otherwise entitled, as well as the forfeiture and loss of her right to a pension.

WHEREFORE, the Plaintiff requests the following relief of this Honorable Court:

A. For the entry of judgment in her favor and against SOUTH SUBURBAN COLLEGE in an amount in considerable excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

B. For an award of her attorney's fees;

C. For the recoverable costs of this action;

D. For such other relief as this Court may deem appropriate.

## COUNT IV
### (Violation of 42 U.S.C. § 1983 – Zuccarelli, Manning, Lareau, and Chiaro)

1-61. Plaintiff adopts and restates the preceding allegations, as though fully set forth herein.

62. Beginning in or about 1991, to and through 2008, in color of State and municipal law and authority, the Defendants FRANK M. ZUCCARELLI, DONALD MANNING, MARTIN LAREAU and LEONARD CHIARO, as agents and representatives of SOUTH SUBURBAN COLLEGE, deprived Plaintiff of her constitutionally protected rights, causing her to suffer exacerbations of her disability, monetary losses, and many other damages.

63. When said Defendants so deprived the Plaintiff, they were acting in furtherance of policies, customs, or procedures of South Suburban College and the municipality affiliated therewith.

64. As the consequence of the aforesaid Defendants' willful and knowing misconduct in violation of Section 1983, Plaintiff has been caused to undergo an exacerbation of her

disability, to incur the necessity to be hospitalized and receive additional care and treatment, to incur and be made responsible for the costs of treatment and therapy, to suffer pain and suffering and a loss of normal life, and to undergo a considerable loss of wages and benefits, and to incur the forfeiture and loss of her right to a pension.

WHEREFORE, the Plaintiff requests the following relief of this Honorable Court:

A. For the entry of judgment in her favor and against FRANK M. ZUCCARELLI, DONALD MANNING, MARTIN LAREAU and LEONARD CHIARO, in their capacity as agents and representatives of SOUTH SUBURBAN COLLEGE, in an amount in considerable excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

B. For an award of her attorney's fees;

C. For the recoverable costs of this action;

D. For such other relief as this Court may deem appropriate.

## COUNT V
### (Violation of Equal Protection – South Suburban College)

1-64. Plaintiff adopts and restates the preceding allegations, as though fully set forth herein.

65. As a consequence of the actions as alleged, Plaintiff has been deprived of the guarantee of Equal Protection under the U.S. Constitution.

WHEREFORE, the Plaintiff requests the following relief of this Honorable Court:

A. For the entry of judgment in her favor and against SOUTH SUBURBAN COLLEGE in an amount in considerable excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

B. For an award of her attorney's fees;

C. For the recoverable costs of this action;

D.      For such other relief as this Court may deem appropriate.

## COUNT VI
### (Retaliatory Discharge – South Suburban College)

1-65.    Plaintiff adopts and restates the preceding allegations, as though fully set forth herein.

66.    In discharging Plaintiff on December 11, 2008, South Suburban College, by and through its agents and employees, was acting in retaliation for Plaintiff's intention to sue the College and for seeking to assert her right to a medical leave of absence as otherwise assured to the College's employees.

67.    Such action was in violation of the public policy of Illinois.

WHEREFORE, the Plaintiff requests the following relief of this Honorable Court:

A.      For the entry of judgment in her favor and against SOUTH SUBURBAN COLLEGE in an amount in considerable excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

B.      For the recoverable costs of this action;

C.      For such other relief as this Court may deem appropriate.

Respectfully submitted,

/s/**Richard S. Zachary**
Richard S. Zachary P.C.
Attorneys for Plaintiff
180 North LaSalle, Suite 1925
Chicago, Illinois 60601
(312) 795-9003
Attorney No. 6197914